1

# UNITED STATES OF AMERICA
# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRADLEY KEITH SLEIGHTER,

        Plaintiff,

Case No. 1:12-cv-1008

Honorable Judge:
GORDON J. QUIST

v

KENT COUNTY CORRECTIONAL FACILITY
 ADMINISTRATION, Defendants,

(PROPOSED DEFENDANTS:
UNDER SHERIFF HESS and
 CAPTAIN RANDY DEMORY)

# (PROPOSED) SECOND AMENDED COMPLAINT

## INTRODUCTION TO PROCEDURAL HISTORY

Plaintiff's original complaint (Docket #1) was filed solely upon the information provided for the Plaintiff's particular set of circumstances. The complaint was filed from the confines of the Kent County Correctional Facility (KCCF) and with no access to legal material to advance and sustain a complaint under 42 USC § 1983.

At the time he had no real understanding of exactly how broad in scope the Defendant's violation of his civil rights reached and was only able to present a perfunctory claim and an undeveloped legal theory to sustain those claims; yet, his complaint survived the initial review

1

37  and it was served upon the Defendants, Kent County Jail Administration and Corizion Medical
38  Services (Doc. #11 and #8 respectively).

39      In the Defendant's answer to complaint (Doc. #13), the Plaintiff suspected that he may
40  not have written his complaint correctly to express the exact claims he was alleging, because the
41  Defendants were making affirmative defenses to claims he had not made; while making no
42  responses to his actual claims, affirmative or otherwise.

43      Upon this realization that the Defendant's affirmative defenses were going to be based on
44  the legal theory that the Plaintiff was alleging lack of medical treatment, they were not liable,
45  because they have a contracted medical provider, Corizon Health Inc., and they are responsible
46  for any treatment he received and/or had not received; the Plaintiff filed a Motion to Dismiss
47  Corizon, as a Defendant (Doc. #16). Motion to Dismiss was granted 04/04/2013, Docket Number
48  23. Plaintiff had hoped that the dismissal of Corizon, would clarify the issues at bar.

49      Plaintiff prepared a First Amended Complaint in support of his motion, and a Motion to
50  Certify Class (Doc. #18). Both the motions were denied on 5/22/2013 (Doc. #29). He then
51  erroneously filed notice to appeal on 5/30/2013 (Doc. #30).

52      In the Defendants objections to these motions they pointed out their objections, one of
53  which was that Plaintiff failed to file a motion for leave to amend.  Therefore, he filed a motion
54  to amend his first amended complaint and failed; on a number of merits.

55      In their objections, Plaintiff was aware they had continued advancing their defense
56  strategy base on claims that were not alleged. Their strategy appeared to be based on what his
57  claims implied, without actually addressing the claims *per se.*

58    He was then incarcerated, 6//3/2013, at KCCF, and unable to address this case any

59    further; due to KCCF's failure to maintain an adequate law library (this resulted in a § 1983

60    complaint [case no. 1:13-cv-0697]). He filed a motion to supplement his complaint, 7/29/2013

61    (Doc. #41), based on the Defendant's policy not allowing another different pain medication.

62    Plaintiff, with leave of Court, incorporates this new claim into a Second Amended

63    Complaint. This would serve a dual purpose; first, it would be in the interest of judicial economy

64    and moot his Motion for Leave of Court to Supplement Complaint (Doc. #41); it also allows the

65    Plaintiff to show that the Defendant's policy has caused an additional violation of his rights.

66                                   **STATEMENT OF FACTS**
67
68    Plaintiff received treatment, as a patient, for a chronic osteo-neurological pain condition,

69    from Ricardo Garza MD, from February 13th, 2007 through January 16th, 2012, before being

70    incarcerated in Kent County Correctional Facility (KCCF).

71    Dr. Ricardo Garza is a licensed medical doctor (MD), in good standing within the local

72    medical community, the State of Michigan, and is licensed by the DEA to prescribe controlled

73    substances; including, methadone.

74    Plaintiff received a legal prescription for methadone on January 16th, 2012 and was

75    incarcerated in the KCCF later that day with prescription in hand (See Exhibit #1, Doc. #1).

76    Methadone is approved by the US Food and Drug Administration for the treatment of

77    moderate to severe pain. Methadone is also approved for use in "Methadone Maintenance

78    Programs" (MMP), to treat opioid addiction. Plaintiff, Bradley Keith Sleighter, was incarcerated

79    in the Kent County Correctional Facility (KCCF) from January 16th, 2012 through November

80    15th, 2012.

81    Plaintiff was denied his medication, without seeing a medical doctor to order the

82    discontinuation of the medication Dr. Garza had just prescribed the same day he was lodged,

83    January 16th, 2012, at KCCF.


84    He was informed that KCCF's policy prohibits the use of opioid medications, and said

85    policy was created and implemented by the jail administration.


86    Due to being denied his medication he experienced a classical withdrawal syndrome

87    which methadone produces upon abrupt discontinuation, and is fully described in Plaintiff's

88    Opposition to Summary Judgment in Favor of the Defendants, Plaintiff's Exhibit #3.


89    Plaintiff was released from KCCF, 9/15/2012, and saw Dr. Belen Amat-Martinez, who

90    prescribed him, the pain medication, Ultram. He took the medication as directed until his

91    incarceration, 6/3/2013.


92    At that time he informed the intake medical staff what pharmacy he had his prescriptions

93    filled at. Within two days, he received two, of the three, medications he took on a daily basis. He

94    received the blood pressure medication he regularly took and a medication for a diagnosed sleep

95    disorder, Nuvigil (a controlled substance). He did not receive the Ultram (a non-controlled

96    substance) for his pain. He was informed that the jail policy prohibited its use. This action led to

97    the Plaintiff filling a Motion to Supplement Complaint (Doc. #41).


98    ## CONCISE SUMMARY OF COMPLAINT


99    Plaintiff's complaint is clear, concise and simple, even though it is not as developed as

100   his "Second Amended Complaint"; the Defendants will have no doubts left as to his claim and

101   his legal standing to advance, maintain, and seek appropriate relief in his § 1983 litigation. They

102   will have no excuse to continue in their legal gamesmanship. The Second Amendment

103   Complaint is clear, concise and brings to bar, a simple, yet powerful legal theory.

104   For the Defendants benefit, the Plaintiff will enumerate the essential elements, but not

105   limit them to, the complaint as follows:

106   1). Plaintiff had a valid legal prescription for methadone.

107   2). He went to jail and was denied his medication, methadone.

108   3). He suffered a painful withdrawal, as a result of not receiving his prescription for methadone.

109   4). Defendant's policy prohibited him from receiving his medication, methadone.

110   Thus stating a claim upon which relief is plausible. He has meet the requirements to

111   maintain his § 1983 litigation and relies on his legal standing set forth henceforth in this brief, to

112   maintain this § 1983 litigation.

113   **PLAINTIFF'S CLAIM WITH LEGAL STANDING**
114
115   Plaintiff claims that the Defendant's medical provider does not provide an approved

116   medical protocol and that: **The Drug Addiction Treatment Act of 2000 (DATA 2000)**, Title

117   XXXV, Section 3502 of the Children's Health Act of 2000, which permits physicians who meet

118   certain qualifications to treat opioid addiction with Schedule III, IV, and V narcotic medications

119   that have been specifically approved by the Food and Drug Administration for that indication.

120   Since there is only one narcotic medication approved by the FDA for the treatment of

121   opioid addiction within the Schedules given, DATA 2000 basically refers to the use of

122   buprenorphine [Subutex and Suboxone] for the treatment of opioid addiction. Methadone  is a

123    Schedule II narcotic approved for the same purpose within the highly regulated methadone clinic

124    setting.

125         Plaintiff also relies on the fact that this entire litigation revolves around the Defendant's

126    policy that denied him access to the manufacture's detailed "withdrawal protocol" for the

127    discontinuation of methadone for pain; not the Kent County Jail's "withdrawal protocol", in

128    which he has another liberty interest at bar for his claim.

> **"Discontinuation of Methadone for Pain.** When a patient no longer requires therapy
> with methadone for pain, use a gradual downward titration, of the dose every two to four days, to
> prevent signs and symptoms of withdrawal in the physically-dependent patient. **Do not
> abruptly discontinue methadone."**

129         Plaintiff claims that the Defendant's policy prohibiting methadone in the jail also

130    prohibits "buprenorphine" (Subutex and Suboxone), the only FDA approved medication for

131    opioid addiction outside a methadone clinic.

132         Plaintiff has a legal right, protected by federal interests, to continue receiving his

133    medication, as his personal physician sees fit. He claims that as a pretrial detainee, innocent in

134    the eyes of the law, retains all the rights and liberties that his bailed counterpart enjoys, except

135    those necessarily lost through the fact of confinement[i] [1]

136         Given this permissible deprivation of liberty, due process and its concept of fundamental

137    fairness dictate that a pretrial detainee should not be subjected to additional punishment or loss,

138    unless such further deprivation receives justification from a valid interest of the state. Included in

---

[1] Cudnik v. Kreiger, 395 F. Supp. 305, at 311 (quotation marks omitted).

139   the ban of punishment without due process is forced and involuntary rehabilitation which in this

140   instance the defendant jail officials seek to impose on the plaintiff.[2] As aptly stated in Hamilton

141   v. Love, supra, 328 F.Supp. at 1193: "If the conditions of pre-trial detention derive from

142   punishment rationales, such as retribution, deterrence, or even involuntary rehabilitation, then

143   those conditions are suspect constitutionally and must fall unless also clearly justified by the limited . .

144   . purpose and objective of pre-trial detention . . .." [ii 3]

145        Recent cases have held that pretrial confinement must be consistent with the least
146   restrictive means available to achieve this valid governmental objective.[iii 4]

147        In Hamilton v. Love, supra, 328 F.Supp. at 1192, the court held: "It is manifestly obvious

148   that the conditions of incarceration for detainees must, cumulatively, add up to the least

149   restrictive means of achieving the purpose requiring and justifying the deprivation of liberty." [iv 5]

150        The state's sole interest in detaining an individual prior to trial is to assure that person's

151   appearance at trial. A corollary to this is the state's interest in the security and internal order of its

152   jails.[v] If the jail policy, here involved, furthers neither of the above interests and plaintiffs are

153   shown to suffer a deprivation of liberty enjoyed by methadone addicts able to post bail, they are

154   entitled to relief. [6]

155        Plaintiff's complaint (Doc. #1) clearly raises a liberty interest. He relies on the Courts

156   clear and concise definitions given in their **6th Circuit Court of Appeals** opinion of Cudnik v.

157   Kreiger; which if read replacing the Plaintiff's and the Defendant's name in that decision, with

158   Sleighter v. Kent County et al., one would be lead to think it was the same § 1983 litigation.

---

[2] Id
[3] Id.
[4] Id
[5] Id
[6] Id at 312

159        Plaintiff is not going to try this case in pretrial filings because he cannot possibly

160    introduce the 1000 U.S. Government documents in support of his position, nor will he be able to

161    present the unlimited Federal Case Law supporting his position, at this time.

162        The jail policy of denying methadone to pretrial detainees, who were receiving treatment

163    at a methadone program prior to incarceration, is in essence a state sanctioned measure of

164    involuntary rehabilitation. It is fostered by governmental officials and constitutes state action

165    under section 1983. The policy does not effectuate the state's narrow interests in pretrial

166    confinement and causes a deprivation that is not suffered by bailed methadone addicts. The

167    policy thus constitutes punishment imposed without a finding of criminal culpability and, as

168    such, is violative of fundamental due process rights. [7].

169        The Plaintiff, *pro se, sui juris,* is calling attention to the Defendant's ongoing disregard

170    for Federal Law and the rights of its inmate population, and the violations he suffer at their

171    hands. One of the issues at bar, is whether the Plaintiff will be able to realize his pursuit of

172    justice and set a legal precedence in both Pain Management and Medication Assisted Addiction

173    Treatment in the KCCF. Plaintiff claims that the Kent County Correctional Facility

174    Administration can show no compelling governmental interest(s) in their practices and their

175    "policy" is not the least restrictive means to accomplish these illusive interests.  Plaintiff raises a

176    violation of his liberty interests.

177        Plaintiff claims that the "policy" in question holds no statutory authority and is not a

178    promulgated policy, nor has it ever been promulgated by any governmental entity entitled to do

---

[7] Id at 313

179  so. Neither have the Defendants ever received any guidance from any qualified addiction

180  specialists in their construction and implementation of the policy in question.

181        Plaintiff claims that KCCF allows pregnant women on "Methadone Maintenance

182  Programs", prior to their incarceration, to receive Methadone during their stay in jail. This

183  practice is neither viewed to be a threat to the security and/or the well order of the institution, nor

184  is it seen as a "hindrance" or "obstacle" that would restrict any means to further, secure or insure

185  any compelling governmental interests.

186        As a result of allowing pregnant women Methadone the Plaintiff brings to bar an *"equal*

187  *protection"* liberty interest.

## PLAINTIFF'S STATEMENT OF PURPOSE
188
## IN THIS § 1983 LITIGATION
189
190
191        Contrary to Defendants belief and argument Plaintiff is not alleging dissatisfaction with

192  medical treatment while incarcerated, but rather is claiming that the Defendant's policy which

193  prohibits methadone to be used in the jail brings to bar another liberty interest as a pretrial

194  detainee.

195        Plaintiff has brought a complaint against the Defendants, Kent County, et al., under the

196  provisions allowed by 42 U.S.C. § 1983, in that his civil rights were violated by a policy

197  implemented by the Kent County Jail Administration.

198        Plaintiff relies on the legal principle that a policy of judicial restraint cannot encompass

199  any failure to take cognizance of valid constitutional claims whether arising in a federal or state

200  institution; in this case, a municipal county jail. When a prisoner regulation or practice, in this

201  case a non-promulgated policy, offends a fundamental constitutional guarantee, Plaintiff prays

202 that the federal courts will discharge their duty to protect his constitutional rights, and when they
203 are violated, administer appropriate relief when justice so requires for the Plaintiff.

204       The Plaintiff, intents to pursue justice in the name of liberty, by right as a US Citizen;
205 and as the US Constitution allows.

206       He will show, by inference, before trial, that they have no legal standing to defeat
207 Plaintiff's complaint and are attempting victory relying on legal gamesmanship and experience.

208       Plaintiff will show that his claims are meritorious and founded in sound legal principles;
209 as well as constitutionally backed principles

210       **<u>CLAIM FOR RELIEF</u>**

211       Relief is appropriate under the provisions outlined in 42 USC § 1983 and can be realized
212 by the Plaintiff.

213       Plaintiff seeks punitive relief against the Defendants for violating his civil rights which
214 resulted in pain and suffering; as well as depriving him of his liberty interests.

215       Punitive relief is appropriate against the Defendants for their implementation of a policy
216 dictating an action and/or lack of action, thus inflicting pain, suffering and injury upon the
217 Plaintiff, from January 16th, 2012 to November 15th, 2012.

218       Compensatory relief is appropriate for the Plaintiff's "appropriate relief", allowed by
219 Congress.

220       The Plaintiff, can realize declaratory relief, and will present a legal position to support
221 this claim for relief.

222       Plaintiff is entitled to such other relief as Justice so allows and requires.
223
224
225
226
227 Date Submitted: August 28, 2013
228

229                        Bradley Keith Sleighter

10

230
231

[i] Inmates of Milwaukee County Jail v. Petersen, 353 F.Supp. 1157, 1160 (E.D.Wisc.1973); Collins v. Schoonfield, *supra*, 344 F.Supp. at 265. *Cf.* Coffin v. Reichard, 143 F.2d 443, 445 (6th Cir. 1944).

[ii] *See also* Rhem v. Malcolm, *supra*, 371 F. Supp. at 622, 623; Inmates of Suffolk County Jail v. Eisenstadt, *supra*, 360 F. Supp. at 686; Conklin v. Hancock, 334 F.Supp. 1119, 1121 (D.N.H.1971); Seale v. Manson, 326 F.Supp. 1375, 1379 (D. Conn.1971).

[iii] Brenneman v. Madigan, *supra*, 343 F.Supp. at 138, citing Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed. 2d 231 (1960)

[iv] *See also* Rhem v. Malcolm, *supra*, 371 F. Supp. at 622; Inmates of Suffolk County Jail v. Eisenstadt, *supra*, 360 F.Supp. at 686; Smith v. Sampson, 349 F.Supp. 268, 271 (D.N.H.1972); Collins v. Schoonfield, *supra*, 344 F.Supp. at 265.

[v] Rhem v. Malcolm, *supra*, 371 F.Supp. at 623; Inmates of Suffolk County Jail v. Eisenstadt, *supra*, 360 F.Supp. at 685, 686; Smith v. Sampson, *supra*, 349 F.Supp. at 271, 272; Brenneman v. Madigan, *supra*, 343 F.Supp. at 137; Hamilton v. Love, *supra*, 328 F.Supp. at 1191

## CERTIFICATE OF SERVICE

I, the Plaintiff, certify that I have delivered to the Defendant's Attorney of record, Varnumn LLP, a true and correct copy of this Proposed **Second Amended Complaint**, by electronic means through the internet to the email address of record, pigreenwald@varnumlaw.com and also to the U.S. District Court for the Western District of Michigan on this 30th, day of August, 2013

Bradley Keith Sleighter
82 50th SW, Apt. 323
Wyoming, Michigan 49548

Phone: (616) 805-0885
Email: bradsleighter@gmail.com

11